UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

EMMONS-SHEEPSHEAD BAY                          **MEMORANDUM AND ORDER**
DEVELOPMENT LLC,                                   13-CV-5430 (RRM)

                                  Debtor.

-------------------------------------------------------------X

ROSLYNN R. MAUSKOPF, United States District Judge.

       This is an appeal arising from the confirmation of a plan of reorganization under Chapter

11 of the Bankruptcy Code.  Appellant-Creditors Albert Wilk, Alex Dikman, and Metropolitan

Estates, Inc., as well as Emmons Ave, LLC in a derivative capacity (collectively,

"Metropolitan"), appeal from an August 28, 2013 order of the United States Bankruptcy Court

for the Eastern District of New York (Elizabeth S. Stong, J.).  That order denied Metropolitan's

motion denying reconsideration of the bankruptcy court's order, dated July 3, 2013, confirming

the plan of Appellee-Debtor Emmons-Sheepshead Bay Development, LLC ("the debtor").  For

the reasons below, the appeal is DENIED.

## Background

       The factual and procedural history underlying this appeal is somewhat lengthy, and the

parties' familiarity with it is presumed.  The crux of the dispute can be stated succinctly.

Metropolitan is an investor in a Brooklyn condominium development that filed for bankruptcy

protection under Chapter 11.  As a creditor and interested party, Metropolitan aggressively

participated in the bankruptcy proceedings throughout.  Directly relevant to this appeal,

Metropolitan filed a single, limited objection to the debtor's proposed plan of reorganization,

claiming that the plan should not be confirmed because it failed to meet the requirement, under

11 U.S.C. § 1129(a)(3), of having been "proposed in good faith."  Metropolitan was granted

certain discovery in connection with its objection.  On June 27, 2013, the bankruptcy court held

an evidentiary hearing on the debtor's application for confirmation of the plan.  Through counsel,

Metropolitan raised concerns regarding outstanding discovery issues, but the bankruptcy judge

pressed ahead with the confirmation hearing.  Metropolitan's counsel fully participated by cross-

examining the debtor's principal, calling its own witness, and arguing its case.  The bankruptcy

court overruled Metropolitan's objection, finding good faith, and confirmed the plan.  A written

order settling the hearing and confirming the plan was filed on July 3, 2013 and entered on July

8, 2013.  Metropolitan did not appeal the confirmation order.

Instead, on July 17, 2013, Metropolitan, newly represented by its third attorney, moved

pursuant to Rules 9023 and 9024 to vacate the confirmation order.  In their motion, Metropolitan

did not raise its good faith objection as pressed during the confirmation hearing.  Rather, on

reconsideration, Metropolitan raised for the first time two new arguments:  first, that it had been

deprived of procedural due process at the confirmation hearing, and second, that the

confirmation was unlawful because the condominium was not, in actuality, property of the

bankruptcy estate but rather property that was held or should be held in a constructive trust, an

issue that was the subject of pending litigation in state court.  On August 15, 2013, the

bankruptcy court held a hearing on Metropolitan's reconsideration motion, which the court

denied orally at the hearing, and subsequently issued a written summary order to that effect on

August 28, 2013.

On September 3, 2013, Metropolitan filed a notice of appeal from the bankruptcy court's

denial of its motion for reconsideration.  That appeal – in which Metropolitan revisits the due

process and constructive trust arguments that it raised for the first time in seeking reconsideration

– is now before this Court.  For the reasons set forth below, the Court finds that those arguments

are procedurally and substantively meritless.  Accordingly, the order of the bankruptcy court denying Metropolitan's motion for reconsideration is hereby AFFIRMED.

**The Record on Appeal**

As an initial matter, the Court finds the record on appeal woefully incomplete, as it does not contain the transcript of the bankruptcy court's August 15, 2013 hearing and oral ruling on Metropolitan's motion for reconsideration.  Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8006 requires an appellant (here, Metropolitan), within fourteen days of filing a notice of appeal, to file with the bankruptcy court and serve on the appellee a "designation of the items to be included in the record on appeal and a statement of the issues to be presented."  Bankruptcy Rule 8006.  Within fourteen days after the service of the appellant's designation and statement, the appellee "may file and serve on the appellant a designation of additional items to be included in the record on appeal." *Id.*

In addition to the items designated by the parties, the record "shall" contain "the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the [bankruptcy court]." *Id.*  Bankruptcy Rule 8006 directs an appellant to (1) "provide to the [bankruptcy court] clerk a copy of the items designated," and (2) to arrange for any transcripts to be delivered to the clerk. *Id.*  Specifically, an appellant must "file with the [bankruptcy court] clerk a written request for the transcript and make satisfactory arrangements for payment of its cost." *Id.*  The Rule also instructs all parties to "take any other action necessary to enable the [bankruptcy court] clerk to assemble and transmit the record." *Id.*

Thus, "[w]hile [Bankruptcy] Rule [8006] does not expressly require that the 'record on appeal' include all transcripts of the proceedings below, its provisions make clear that those documents which include 'findings of act' or 'conclusions of law of the court' are deemed part of

the record, including any transcripts, for which the Rule makes express cost provisions." *In re Harris*, 464 F.3d 263, 269 (2d Cir. 2006); *see In re McCarthy*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999) ("Whenever findings of fact and conclusions of law are rendered orally on the record, it is mandatory that an appellant designate the transcript under Rule 8006. There is no other way for an appellate court to be able to fathom the trial court's action").

The bankruptcy court specifically advised the parties of these procedural rules in a document entitled, "Notice to Parties Concerning Appeal." That notice expressly called the parties' attention to Bankruptcy Rule 8006, admonishing them that it was their duty "to insure that the record on appeal is complete," and that an "incomplete record will otherwise be transmitted, for disposal as the District Court shall determine." (No. 12-BK-46321, Doc. No. 145.)[1]

Metropolitan has failed to comply with Bankruptcy Rule 8006.[2] Metropolitan did not ensure the preparation of the bankruptcy court's August 15, 2013 hearing on its motion for reconsideration. To be sure, the record on appeal includes the bankruptcy court's written order, dated August 28, 2013, denying Metropolitan's motion for reconsideration. (*See* Doc. No. 1 (Notice of Appeal); *id.* (Att. 57 (8/28/13 Order)).) But that August 28th order states nothing more than the fact that Judge Stong held a hearing on August 15, 2013 to consider Metropolitan's motion, and was denying that motion "in accordance with the determination by

---

[1] According to the bankruptcy docket, on September 25, 2013, Metropolitan filed its designation and statement of the issues. (No. 12-BK-46321, Doc. Nos. 147–48.) One month later, on October 1, 2013, the clerk of the bankruptcy court transmitted the record on appeal to this Court. (*Id.*, Doc. No. 150.) In a submission dated and filed in the bankruptcy court on October 8, 2013, the debtor provided a counter-designation of contents to be included in the appellate record, which encompassed twenty additional documents. (*Id.*, Doc. No. 153.) It is unclear why the debtor filed this untimely counter-designation after the record had already been provided to the Court. In any case, none of those twenty items were the materials that, as addressed in the text *infra*, should have been provided to the Court on appeal.

[2] The debtor, as appellee, has an obvious interest in ensuring that the appellate record be sufficiently complete such that it can defend its victory below on the merits. Although the burden was ultimately on Metropolitan to provide the minutes in question, the debtor shares some of the blame for the incompleteness of the record.

this Court and record of the hearing held" on August 15th.  (*Id.*)  By not providing the transcript of that August 15th hearing, the Court is left to wonder what issues were raised and resolved at the hearing on reconsideration, the nature and scope of Judge Stong's oral ruling, and the reasons underlying the court's conclusions.  Under these circumstances, the Court does "not have a complete record to review the bankruptcy court's findings."  *Harris*, 464 F.3d at 269.

The question becomes how best to address the incompleteness of this record, given the issues raised on appeal.  Bankruptcy Rule 8001 endows the Court with discretion to dismiss an appeal without reaching the merits when the appellant fails to perform a necessary step in completing the record.  *See In re Hawkins*, 295 F. App'x 452, 453 (2d Cir. 2008) ("The rule makes clear that a district court enjoys discretion to dismiss an appeal in all cases except where the debtor does not file a timely notice of appeal, in which case the court has no choice but to dismiss the case") (quoting *Harris*, 464 F.3d at 270).  Dismissal can be appropriate when, as here, the order appealed from does not disclose the factual or legal basis of the bankruptcy judge's decision, and the appellant has failed to provide the Court with a key transcript.  *See, e.g.*, *In re Corio*, 2008 WL 4372781, at *7 (D. N.J. Sept. 22, 2008) (dismissing portion of appeal as to which the appellants failed to provide an "appropriate record to allow the Court to conduct an informed, substantive appellate review," without prejudice to moving to reinstate once proper record provided).  Alternatively, faced with the absence of the specific content of Judge Stong's legal conclusions underlying her denial of the reconsideration motion, the Court could simply affirm the order.  *See In re Dockal*, 2005 WL 3337774, at *3 (W.D. Tex. Sept. 6, 2005) ("Accordingly, based on the record and in the absence of a properly designated and submitted transcript or relevant portion thereof, this Court declines to conclude that the decision of the Bankruptcy Judge is clearly erroneous.  The Final Judgment is affirmed"); *see also Hall v. Galie*,

354 F. App'x 715, 716 (3d Cir. 2009) (affirming where the appellant failed to provide transcript of trial, which included oral rulings on motions, and where the appellant's brief summarily argued that the defendants should be liable and did not identify the court's alleged errors); *McGinnis v. Gustafson*, 978 F.2d 1199, 1201 (10th Cir. 1992) (affirming where the appellant's failure to provide transcript of oral ruling "raises an effective barrier to informed, substantive appellate review").

However, courts have also resolved appeals when the record, although incomplete, is sufficient to enable an informed review of the parties' arguments. *See, e.g.*, *Kyle v. Dye*, 317 B.R. 390, 393–94 (B.A.P. 9th Cir. 2004) (distinguishing between records that are "impossibly incomplete" or "merely incomplete": "The 'merely incomplete' record appeared to us then (and now) to be sufficient for us to obtain a complete understanding of the issues so that we could engage in informed review. Hence, we exercised our discretion to resolve the appeal on the merits."); *In re McCarthy*, 230 B.R. at 417 ("The appellant's failure to provide the one document that would directly identify the manner in which the bankruptcy court exercised its discretion entitles us to dismiss this appeal. . . . Here, we will exercise our discretion to examine what record has been provided. In doing so, we look for any plausible basis upon which the bankruptcy court might have exercised its discretion to do what it did. If we find any such basis, then we must affirm"); *In re Corio*, 2008 WL 4372781, at *2 ("Therefore, the Court has undertaken the task of reviewing the record to the furthest extent possible by relying on documents listed on appellants' designation of items to be included in the record").[3]

---

[3] Still another alternative would be for the Court to obtain the missing transcripts pursuant to its power under Bankruptcy Rule 8019 – the avenue taken by Judge Garaufis in *Frostbaum v. Ochs*, 277 B.R. 470, 473 n.1 (E.D.N.Y. May 16, 2002). *See id.* ("this court has obtained the transcript of the hearing and a copy of the Fee Order in order to expedite a decision on the merits and to avoid requests for additional time or to refile the appeal"). The appellant in *Frostbaum*, though, had an excuse for his procedural misstep: he was pursuing the bankruptcy appeal *pro se*. In contrast, Metropolitan is represented by counsel – its third attorney in this case – who is expected not

Here, the Court finds that it is able to address the merits (or lack thereof) of Metropolitan's arguments based on the record as it currently stands. First, despite the missing transcript pertaining to the reconsideration denial, Metropolitan's arguments are readily addressed upon review of the transcript of the June 27, 2013 confirmation hearing – which *is* available.

Second, as explained at length in the "Discussion" section *infra*, this is simply not a close case. For instance, Metropolitan moved for reconsideration of the confirmation decision on completely different grounds than those it put forward at the confirmation hearing – rendering such newly-minted arguments procedurally improper on a reconsideration motion, not to mention potentially forfeited on appeal insofar as Metropolitan is challenging the underlying confirmation decision. Moreover, Metropolitan's due process claim is, to put it mildly, dubious.[4] Having examined the record of the bankruptcy proceedings, Metropolitan's procedural rights were unquestionably protected, including at the confirmation hearing, and the record is replete with instances of Metropolitan aggressively litigating a number of different matters, sometimes tangibly impacting the substance of the plan that Judge Stong ultimately approved.

Consequently, in light of the available materials, the Court can conduct a complete and informed analysis of Metropolitan's claims on appeal even without the transcript of the hearing on reconsideration. And as discussed more fully below, even without the precise contours of Judge Stong's legal reasoning for denying Metropolitan's reconsideration motion, the Court is

---

only to know the procedural rules, but also to exercise a degree of common sense. Moreover, as discussed more fully below, the issues raised in this appeal are easily addressed on the available record, and on procedural grounds.

[4] In opposing the motion for reconsideration, the secured creditor may have put it best in characterizing Metropolitan's due process argument as "preposterous." (Doc. No. 1 (Att. 52) at 1.)

confident that Metropolitan's claims – both on reconsideration and renewed here on appeal – are without merit.[5]

**Standard of Review**

Pursuant to 28 U.S.C. § 158(a), "the district courts of the United States . . . have jurisdiction to hear appeals . . . from final judgments, orders, and decrees" of a bankruptcy court. *Id.* The role of a district court is *not* to hear testimony or to consider documentary evidence; it is to review a factual record as found by a bankruptcy court and to determine whether the bankruptcy court made an error under applicable standards of appellate review. *Id.*; *see In re Sanshoe Worldwide Corp.*, 993 F.2d 300, 305 (2d Cir. 1993) ("the district court acts as an appellate court in reviewing a bankruptcy court's judgments").

Bankruptcy Rule 8013 provides that a bankruptcy court's "[f]indings of fact, whether based upon oral or documentary evidence, shall not be set aside [on appeal] unless clearly erroneous." *Id.* A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985). Conclusions of law of a bankruptcy court are reviewed *de novo*, *see, e.g.*, *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2007), while mixed questions of law and fact are reviewed "either *de novo* or under the clearly erroneous standard depending on whether the question is predominately legal or factual." *In re Am. Express Merchants' Litig.*, 554 F.3d 300, 316 n.11 (2d Cir. 2009), *vacated on other grounds by Am. Express Co. v. Italian Colors Rest.*, 130 S.Ct. 2401 (2010).

---

[5] Although the Debtor raises valid concerns regarding equitable mootness, the Court does not reach that issue as it disposes of all claims on this appeal on other grounds.

Importantly, here, the Court reviews an order denying reconsideration for an abuse of discretion. *See Key Mech. Inc. v. BDC 56 LLC*, No. 01-CV-10173 (RWS), 2002 WL 467664, at *2 (S.D.N.Y. Mar. 26, 2002); *see also McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983) (abuse-of-discretion standard under Fed. R. Civ. P. 59(e)); *Jones v. Trump*, 971 F. Supp. 783, 786 (S.D.N.Y. 1997) (abuse-of-discretion standard under Fed. R. Civ. P. 60). A court abuses its discretion when its decision: (1) "rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding"; or (2) "though not necessarily the product of legal error or clearly erroneous factual finding[,] cannot be located within the range of permissible decisions." *In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003); *see ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir. 1996) ("[A]buse of discretion . . . usually involves either the application of an incorrect legal standard or reliance on clearly erroneous findings of fact").

**Metropolitan's Grounds for Reconsideration and on Appeal are Procedurally Improper**

In moving for reconsideration of the confirmation decision, and now on appeal, Metropolitan presses two new arguments that it never made at the confirmation hearing. First, Metropolitan contends that the court below violated its constitutional right to procedural due process by denying its request to adjourn the hearing and for additional discovery – which purportedly deprived Metropolitan of a "meaningful" opportunity to be heard. Second, Metropolitan argues that the property was never actually part of the bankruptcy estate because it is in a constructive trust, resulting from fraud committed by the debtor against Metropolitan

several years before the bankruptcy.  In an order dated August 28, 2013, Judge Stong denied Metropolitan's motion for reconsideration.[6]

Metropolitan's basis for seeking reconsideration of the lower court's confirmation decision was procedurally improper, and Judge Stong would have been wholly entitled to deny the motion on that ground alone.

"Reconsideration under Fed.R.Civ.P. 59(e), made applicable here by Bankruptcy Rule 9023, is merited when there has been a clear error or manifest injustice in an order of the court or if newly discovered evidence is unearthed." *Bace v. Babitt*, No. 11-CV-6065 (PAC), 2012 WL 2574750, at *4 (S.D.N.Y. July 3, 2012) (quoting *In re Bird*, 222 B.R. 229, 235 (Bankr. S.D.N.Y. 1998)) (quotations omitted); *see* Local Bankr. Rule 9023-1 ("A motion for reconsideration of an order may be made pursuant to Bankruptcy Rule 9023.")  "The movant must show that the court overlooked factual matters or controlling precedent that might have materially influenced its earlier decision." *Key Mech. Inc. v. DBC 56 LLC*, 01-CV-10173 (RWS), 2002 WL 467664, at *2–3 (S.D.N.Y. Mar. 26, 2002).  A "motion to reconsider should not give the moving party another bite at the apple by permitting argument on issues that could have been or should have been raised prior to the original motion." *Id.* (quoting *In re Bird*, 222 B.R. at 235) (quotations omitted).

Metropolitan clearly failed to identify any new law or facts that, if presented to the bankruptcy court at the confirmation hearing, would have yielded a different outcome. Represented by its *third* attorney on the heels of its failed bid to thwart confirmation, Metropolitan's motion for reconsideration was a manifestly improper attempt to get "another bite at the apple" by raising new, but previously available, legal arguments.  After all, its due process

---

[6] As explained in the "Preparation of the Record on Appeal" section, Metropolitan has failed to provide the transcript of the hearing at which Judge Stong orally denied the motion and explicated her findings of law.

claim pertained to events either entirely predating the hearing or undergirding the hearing itself,[7] and Metropolitan had already been litigating its constructive trust claim in New York Supreme Court for years. Metropolitan could have raised either or both claims at the hearing, but made a strategic choice not to do so. Based on this procedural ground alone, the Court could not possibly find that Judge Stong abused her discretion by denying Metropolitan's motion for reconsideration.

For the same reasons, insofar as Metropolitan's appeal is directly challenging Judge Stong's underlying confirmation decision, Metropolitan has forfeited its right to make that argument. Metropolitan had months of advance notice of the confirmation hearing, appeared at the hearing through counsel, and actively participated by cross-examining the debtor's principal, eliciting testimony from its own witness, and advocating zealously for its position. Metropolitan made one argument: that the plan was un-confirmable because it had not been proposed in good faith. Having participated in the confirmation proceedings below and having declined to raise either of the two arguments that it advances on appeal, Metropolitan has forfeited its right to raise those claims to the extent it is contesting the lower court's confirmation decision. *See In the Matter of Fabric Tree*, 426 F. Supp. 872, 878 (S.D.N.Y. 1977) (holding that, where party in interest appeared at confirmation hearing, objected on a particular ground, and then participated

---

[7] In conjunction with its motion for reconsideration, Metropolitan filed an affidavit of a building inspector stating that, after the June 27th hearing, he checked some of the unoccupied ground-floor apartments at the property and found no flooding. The inspector acknowledged, however, that he could not check every such apartment because some of those units were occupied. According to Metropolitan, this somehow refuted the statement of SDF's attorney, made at the hearing, that its investors were concerned by recent flooding at the property and would abandon the plan unless it was confirmed immediately. Metropolitan baldly contends that counsel for SDF made this allegedly false statement to engender a sense of urgency and to rush Judge Stong into confirming the plan – a proposition that Metropolitan incorporates into its due process argument. Needless to say, the inspector's affidavit proved nothing and certainly did not provide new facts that would have given the court below cause to reconsider its decision. Not only was the affidavit incomplete on its face (inasmuch as its intended purpose was to prove that there was no new flooding), but, more importantly, Judge Stong's decision to confirm the plan clearly had nothing to do with any supposed external time constraint. It should be noted that SDF's attorney immediately submitted a responsive affidavit in which he assured the bankruptcy court that he had been completely honest and criticized Metropolitan for its dubious litigation tactics. (Doc. No. 1 (Att. 52).)

in a hearing by calling witnesses, that party "waived its due process objection to the hearing below by failing to object," and noting that the party's due process objection, which it lodged after the confirmation decision, was "clearly of no consequence"); *see also In re TerreStar Corp.*, 2013 WL 447037, at *7 ("Even if Perez could overcome the presumption of equitable mootness, his appeal cannot proceed because he never raised the arguments he raises here to the Bankruptcy Judge. . . . By not raising these specific issues, Perez did not afford the Bankruptcy Judge the opportunity to focus his attention on whether the Plan met these elements of § 1129 prior to his ruling that it did. Appellant's failure to raise these arguments to the Bankruptcy Court constitutes waiver unless the failure to reach them would be a manifest injustice"); *In re Gribben*, 158 B.R. 920, 921 (Bankr. S.D.N.Y. 1993) (finding that argument "waived as to this appeal by the Government's failure to raise it in the proceedings below").

**The Merits of Metropolitan's Due Process Claim**

A constitutional procedural due process claim consists of two elements: "(1) the existence of a property or liberty interest that was deprived; and (2) deprivation of that interest without due process." *Weslowski v. Zugibe*, 12-CV-8755 (KMK), 2014 WL 1612967, at *16 (S.D.N.Y. Mar. 31, 2014) (quoting *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)) (quotations omitted). Assuming, *arguendo*, that the confirmation hearing implicated a "deprived property interest" as to Metropolitan,[8] the second prong of this analysis could not possibly be satisfied. That is because Metropolitan's right to due process was assiduously protected below.

---

[8] That is hardly a foregone conclusion. At any rate, because Metropolitan was so ineluctably afforded sufficient process, the Court need not consider that more abstract prong of the procedural due process standard. *See generally Jones v. City of New York*, 12-CV-9144 (PAE), 2013 WL 4028183, at *6 (S.D.N.Y. Aug. 8, 2013) ("Even assuming that Jones had suffered a deprivation of a property interest as a result of state action, he was provided with adequate process").

To begin, Metropolitan participated extensively in the pre-confirmation bankruptcy proceedings for a period of over seven months, which included filing numerous written objections and motions. Among other things, Metropolitan opposed the debtor's request for post-petition financing relating to damage that the property sustained from Superstorm Sandy; filed proofs of claims against the bankruptcy estate and then objected to the debtor's motions to expunge those claims; moved to examine the debtor pursuant to Bankruptcy Rule 2004; objected to the debtor's disclosure statement and second amended disclosure statement; moved to adjourn the confirmation hearing; voted on the second amended plan (after the deadline for such voting had already passed); and objected to the second amended plan (once again after the court-ordered deadline). Through counsel, Metropolitan attended at least six different hearings before the bankruptcy court,[9] and participated in at least three conferences with the debtor and Judge Stong pertaining to settlement negotiations. At no point did the court below ever stifle Metropolitan's right to be heard and to participate in the bankruptcy proceedings. To the contrary, Judge Stong painstakingly safeguarded that right.

Furthermore, on April 11, 2013, Metropolitan received notice that the confirmation hearing would occur on June 27, 2013 – thereby providing it with more than two months of notice, which was ample time to prepare for an evidentiary hearing. And even though the lower court set June 20th as the deadline for any written objections to the plan, and Metropolitan violated that deadline by not filing its objection until June 26th, Judge Stong allowed Metropolitan fully to litigate its objection at the June 27th hearing. As described, counsel for Metropolitan cross-examined the debtor's principal, presented the testimony of its own witness, and argued forcefully against confirmation.

---

[9] Those court appearances were on October 16, 2012, January 14, 2013, March 5, 2013, April 11, 2013, May 28, 2013, and June 27, 2013.

It should not go unmentioned, too, that Judge Stong was a zealous steward of Metropolitan's right to participate during the hearing itself. The judge repeatedly relaxed the rules of evidence to accommodate the questions posed by Metropolitan's attorney – inquiries that were sometimes irrelevant to the operative issue of good faith, or that were otherwise improper under the rules of evidence. (*See* 6/27/13 Minutes at 46 (overruling objection to Metropolitan's question that Judge Stong described as at the "outer boundary of the outer boundary of what could even conceivably be relevant to the issue before the Court"), 52–53 (overruling objection to Metropolitan's question seeking to elicit hearsay); *see also id.* at 83 (in ruling on good faith issue, emphasizing that Metropolitan had been accorded a "wide berth with respect to admissible evidence").) The record, therefore, directly and unequivocally refutes the notion that Metropolitan was deprived of a meaningful opportunity to be heard and to participate in the hearing. Of course, that the lower court did not ultimately rule in Metropolitan's favor says nothing of whether it was accorded due process, as an "opportunity to be heard does not mean the right to win." *Wynder v. McMahon*, No. 99-CV-772 (ILG), 2013 WL 1759968, at *10 (E.D.N.Y. Apr. 24, 2013).

Nonetheless, Metropolitan complains that it was denied the necessary discovery to mount a meaningful challenge to the plan. In the Chapter 11 setting, a disclosure statement is the method through which interested parties receive information about a plan of reorganization. The decision of a bankruptcy court to approve a debtor's disclosure statement is one of the major procedural steps in a Chapter 11 case, which the court will uphold only if the disclosure statement, read in tandem with the proposed plan, provides the holders of claims and interests with financial information sufficient to permit them to make an independent and informed judgment on whether to accept or reject the plan. 7 *Collier on Bankruptcy* ¶¶ 1100.09(2)(b),

1125.02 (16th ed. 2014). Here, on April 27, 2013, Judge Stong made that determination by approving the debtor's second amended disclosure statement.

To be sure, Metropolitan could, and did, seek additional discovery from the debtor. Yet it was not until June 26, 2013 – *one day* before the confirmation hearing that had been scheduled months earlier – that Metropolitan moved for the court below to compel the debtor to comply with its discovery request. Not only was that motion to compel untimely, but it was overly broad and burdensome. Metropolitan sought, among other materials, "[a]ll financial statements" starting in 2004 for Emmons Avenue and Emmons-Sheepshead, and "[a]ll documents constituting, mentioning or otherwise referring to all payments of funds and/or expenditures by or on behalf of Emmons-Sheepshead relating to the premises." (Doc. No. 1 (Att. 45).) Judge Stong hardly erred by refusing to adjourn the confirmation hearing to accommodate this eleventh-hour, unreasonably-expansive discovery request.[10]

For its part, Metropolitan emphasizes that it was engaged in settlement discussions with the debtor prior to the confirmation hearing, and accuses the debtor's attorney of negotiating in bad faith. In other words, Metropolitan asserts, the debtor never intended to negotiate a settlement, and its attorney exploited those discussions as a stall tactic to delay discovery past the "finish line" of confirmation. (Br. for Appellant at 9, 16; Rply Br. for Appellant at 5.) But that argument is flatly unpersuasive.

For starters, in its brief, Metropolitan admits that *it* "halted the discovery process and did not file a motion to compel" during settlement discussions. (Br. for Appellant at 9.) Metropolitan cannot now complain about a lack of discovery based on the conduct of its own

---

[10] As the debtor notes, Judge Stong's discovery scheduling order, which was signed by Metropolitan's counsel, required a writing (with all the parties' consent) to confirm any modification of the discovery deadlines, or the court's intervention if an agreement could not be reached. The debtor never agreed to any extensions, and Metropolitan did not seek the court's intervention until one day before the confirmation hearing. (Br. for Appellee at 13.)

competent counsel, one who surely should have been prepared to proceed with the litigation in the event that settlement discussions fell through for whatever the reason, whether in good or in bad faith as alleged. Moreover, by all accounts, Metropolitan's current lawyer was not yet even involved in the bankruptcy during those settlement discussions. It is telling that the attorney for Metropolitan who *actually* participated in those settlement discussions levelled no such allegations of bad faith or "trickery" during the confirmation hearing.[11] As the debtor emphasizes, it was no secret that the plan was moving toward confirmation while the parties concurrently engaged in those negotiations. (Br. for Appellee at 13.) There was never an agreement to alter or suspend the confirmation schedule, or to postpone the confirmation hearing in the event that the debtor and Metropolitan failed to reach an accord. As the debtor explained, it was "faced with [SDF's] stay relief and the strong possibility that if it d[id] not confirm a Plan shortly, it will be faced with a State Court foreclosure which will wipe out any payments to its creditors." (Doc. No. 1 (Att. 42).) Metropolitan always knew these facts.

The Court also takes note of several pre-confirmation letters to the bankruptcy court – which counsel for the debtor and Metropolitan wrote separately – apprising Judge Stong of the status of the continued settlement negotiations. Although Metropolitan's attorney complained at points that the parties were not making sufficient progress, there were also indications that good faith settlement discussions were underway. In fact, in a letter dated the same day as the confirmation hearing, Metropolitan noted that, three days earlier, it had received a new offer from the debtor, that Metropolitan had proposed a counteroffer, and that an agreement could be forthcoming. (Doc. No. 1 (Att. 47) ("[I]f Debtor was to return to the same waterfall structure with the newly offered claim amount to our clients, that would provide a satisfactory resolution

---

[11] Unlike Metropolitan's present counsel, the debtor's attorney, Lori Schwartz, has been involved in this case since the filing of the Chapter 11 petition.

and allow the reorganization to proceed").) Hence, notwithstanding Metropolitan's self-serving allegations, there is no convincing evidence of bad faith negotiations on the debtor's part.

As a final matter, the Court is highly doubtful that additional discovery would have made any difference in the outcome of the confirmation hearing. As previously detailed, nothing that Metropolitan adduced or argued at the hearing credibly suggested any impropriety during the pre-petition real estate closings. Nor would the alleged impropriety, even if it existed, have had a logical, material bearing on whether the plan had been proposed in good faith. And, inasmuch as Metropolitan objected to virtually every action that the debtor took prior to confirmation, including voting against the second amended plan that Judge Stong ultimately confirmed, it is difficult to fathom how further discovery was reasonably necessary for Metropolitan to cast an informed vote.

In brief, the bankruptcy court assiduously protected Metropolitan's due process rights during the proceedings below, and Metropolitan participated aggressively at each stage of the pre-confirmation bankruptcy process. The premise that Metropolitan was denied due process is simply unsupportable.[12]

---

[12] Metropolitan cites and quotes various cases for due process axioms and boilerplate. Those cases, which deal with procedural due process claims in totally unrelated contexts, provide no reason for this Court to rule differently. *See, e.g.*, *Armstrong v. Manzo*, 380 U.S. 545, 549–50 (1965) (failure of mother and her successor husband to notify divorced father of pendency of proceedings to adopt daughter deprived father of due process of law so as to render adoption decree constitutionally invalid); *Morgan v. United States*, 304 U.S. 1, 19–20 (1938) (in proceeding instituted on initiative of Secretary of Agriculture by notice of inquiry into reasonableness of rates charged by market agencies at stockyards, where no specific complaint was formulated and the Secretary accepted and made as his own the findings that had been prepared by the active prosecutors for the government after an *ex parte* discussion with them, and without according any reasonable opportunity to the owners of the market agencies to know the claims against them and to contest the claims, the owners of the market agencies were not given a "full hearing"); *Hurtado v. California*, 110 U.S. 516, 538 (1884) (holding that due process does not require an indictment by a grand jury in a prosecution by a state for murder).

**Good Faith**

Metropolitan does not raise on appeal the claim that it *actually* litigated at the confirmation hearing, that is, its argument that the plan should not be confirmed because it had not been proposed in good faith under 11 U.S.C. § 1129(a)(3). The bankruptcy court squarely rejected that assertion, and it is clear why. Nonetheless, out of an abundance of caution, this Court finds that Judge Stong properly rejected Metropolitan's claim.

Generally, a plan of reorganization may be confirmed only if a bankruptcy court determines that each requirement is met under 11 U.S.C. § 1129(a). This includes that the plan have been proposed "in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The so-called "good-faith test" requires that "the plan was proposed with 'honesty and good intentions' and with 'a basis for expecting that a reorganization can be effected.'" *Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984) (quoting *Manati Sugar Co. v. Mock*, 75 F.2d 284, 285 (2d Cir.1935)). The good-faith test "speaks more to the process of plan development than to the content of the plan." *In re Bush Industries, Inc.*, 315 B.R. 292, 304 (B. W.D.N.Y. 2004). The issue must be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan, *see In re WorldCom, Inc.*, No. 02-BK-13533 (AJG), 2003 WL 23861928, at *51 (Bankr. S.D.N.Y. Oct. 31, 2003), including the debtor's pre-filing conduct. *See Leslie Fay*, 207 B.R. at 781. A finding of good faith will not be overturned "unless the opponent of the plan can show that the finding was clearly erroneous." *In re Bd. of Directors of Telecom Argentina, S.A.*, 528 F.3d 162, 174 (2d Cir. 2008) (quoting *Koelbl*, 751 F.2d at 139) (quotations omitted).

Based on the record of the confirmation hearing, there is absolutely no basis to question the lower court's determination that the debtor honestly believed that it was in need of

reorganization, and that the plan was negotiated and proposed with the intention of accomplishing a successful reorganization.

At the hearing, Judge Stong directly credited the testimony of the debtor's principal, Pinson, as "both persuasive and credible," (6/27/13 Minutes at 83), and such a finding was well-founded even on this cold record. Pinson testified articulately and thoroughly, and, more to the point, provided credible explanations for the events that Dikman, Metropolitan's principal, chalked up to impropriety.[13] Moreover, Dikman testified vaguely and conspiratorially about money supposedly paid under the table at closings. But Dikman identified only one such purportedly improper closing, he could not pinpoint exactly when that closing occurred or name the purchaser, and he did not even bring any of the relevant paperwork to court.[14]

Furthermore, even assuming that the sales revenue was underreported in the fashion alleged by Metropolitan, that fact had no material bearing on whether the Chapter 11 plan – negotiated years later in the shadow of impending foreclosure – was proposed with "honesty and good intentions." Judge Stong repeatedly made this very point during the hearing. The plan was not proposed, for instance, as part of a scheme of delay, or solely for tax purposes – situations that courts have found to have been in bad faith. *See* 7 *Collier on Bankruptcy* ¶ 1129.02[3][a] (16th ed. 2014). Under the circumstances presented, the arguments advanced by Metropolitan in

---

[13] For example, Pinson spoke on rebuttal about the specific closing to which Dikman had apparently been referring in his testimony. At that closing, Pinson explained, the purchaser was also a contractor or plumber and had personally done a "tremendous" amount of work on the unit. Consequently, the money paid at the closing was less than the amount in the sales contract to account for credits owed to the buyer. As to Dikman's allegations that a man named "Lockshen" had siphoned money from numerous closings, Pinson stressed that Lockshen was a businessman who had independently agreed with the bank to fund certain aspects of the condominium development, and that the bank approved every dispensation to Lockshen.

[14] Dikman claimed that he did not know there would be a hearing and was unprepared to testify. In fact, as noted, the confirmation hearing had been scheduled over two months earlier. And, as the debtor points out, (Br. for Appellee at 12), the Local Bankruptcy Rules required that Metropolitan be prepared to conduct an evidentiary hearing. *See* Local Bankruptcy Rule 9014-2 ("At the first scheduled hearing in a contested matter, the parties should be prepared to conduct an evidentiary hearing, at which witnesses may testify if . . . the hearing is on confirmation of a plan in a case under . . . chapter 11 . . . of the Bankruptcy Code").

opposing confirmation were, simply put, extraneous to the issue of good faith under 11 U.S.C. § 1129(a)(3). In sum, Judge Stong's determination that the plan was proposed in good faith is unassailable.

**Constructive Trust**

Finally, for the first time on reconsideration, and again on appeal, Metropolitan raised the issue of constructive trust. As noted above, Metropolitan's failure to present this argument at the confirmation hearing provides sufficient basis for denying Metropolitan reconsideration.

Insofar as Metropolitan wants *this* Court to impose a constructive trust, (*see* Rply Br. for Appellant at 3), it will do no such thing. Given other available remedies, this Court will not opine in the first instance on any issue relating to a constructive trust.

For one, a constructive trust is inappropriate when an alternative remedy exists at law and a party's interests are not particularized to the trust *res*. Both factors exist here. The rights and obligations between Metropolitan and the debtor are governed by a written contract setting forth the terms and conditions of Metropolitan's investment. *See Abraham v. American Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222 (E.D.N.Y. 2013) ("It is well established that the existence of a contract precludes a claim for a constructive trust."); *see also Rosenblatt v. Christie*, 195 F. App'x 11, 13 (2d Cir. 2006) ("[P]laintiff is not entitled to a constructive trust because the rights of the parties here are based on a written agreement."). Under these circumstances, Metropolitan plainly had – and continues to have – an adequate remedy at law: an action for damages against Pinson and the Emmons LLCs. And that is precisely the remedy that Metropolitan has vigorously pursued. Metropolitan brought claims in state court for, *inter alia*, breach of contract and fiduciary duty, and has apparently received a very favorable judgment with almost $2 million in damages. (Rply Br. for Appellant at 1.) Further, Metropolitan's interest in the

properly was never tethered to any unique aspect of the property itself, which was underscored by Emmons Avenue's contractual right to buy out, at any time, Metropolitan's interest in that LLC.

In addition, as far as the Court is aware, there has never been a state court verdict or judgment in Metropolitan's favor finding that a constructive trust existed, much less such a verdict or judgment before Judge Stong confirmed the plan. In that regard, on August 29, 2011, Metropolitan filed a state court lawsuit against Pinson and the Emmons LLCs, including Emmons-Sheepshead – *i.e.*, the soon-to-be debtor in the bankruptcy. On November 2, 2011, the state action defendants moved for summary judgment with respect to Metropolitan's constructive trust claim and to vacate the notice of pendency on the property. On June 15, 2012, the state court dismissed Metropolitan's constructive trust action brought in its individual capacity, but denied the state action defendants' motion regarding that claim in its derivative capacity, and also denied the debtor's motion to cancel the notice of pendency.

The state court's decision on the partial summary judgment motion is part of the record on this appeal, and Metropolitan makes much of the fact that its derivative cause of action for a constructive trust survived summary judgment. (Br. for Appellant at 7, 22; Rply Br. for Appellant at 2.) But Metropolitan's emphasis is misplaced. The state court merely held that "Metropolitan's derivative cause of action sufficiently allege[d] the elements of a constructive trust." (Doc. No. 1 (Att. 14 at ECF 79).) This was not a verdict, much less a judgment in Metropolitan's favor. It was simply a recognition that Metropolitan had adequately pled the elements of a constructive trust in its derivative action. Absent a verdict or judgment, Metropolitan could not "properly represent to the bankruptcy court that [it] was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor." *In re*

*Omegas Group, Inc.*, 16 F.3d at 1449; *see Taub v. Taub (In re Taub)*, 427 B.R. 208, 220 (Bankr. E.D.N.Y. 2010) ("Until the state court or this court issues an order [imposing a constructive trust], the [properties subject to a constructive trust action] are . . . property of the Debtor's estate under Bankruptcy Code Section 541").

Finally, at no point before the plan was confirmed did Metropolitan institute an adversary proceeding in the bankruptcy court to recover money from the debtor. *See* Bankruptcy Rule 7001(1). Since the confirmation, Metropolitan has apparently commenced such a proceeding by filing a complaint in the bankruptcy court, pursuant to 11 U.S.C. § 1144, seeking to revoke the confirmation order and the debtor's discharge on the grounds of fraud and the infringement of Metropolitan's due process rights. (Br. for Appellee at 3.) *See* Bankruptcy Rule 7001(5). As the Debtor notes, *this* is the proper vehicle through which to raise any issue of constructive trust. (Br. for Appellee at 17.)

## Conclusion

For the reasons stated herein, Metropolitan's appeal of the bankruptcy court's August 28, 2013 reconsideration order is DENIED.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
        September 23, 2014

_____
ROSLYNN R. MAUSKOPF
United States District Judge